REQUESTED BY: Senator Deb FischerNebraska Legislature
In 2001, the Nebraska Legislature enacted the Enhanced Wireless 911 Services Act. 2001 Neb. Laws, LB 585 (codified at
Neb. Rev. Stat. §§ 86-2201 to 86-2214 (Supp. 2001) [the "Act"]). The Act has been amended and is currently codified at Neb. Rev. Stat. §§ 86-442 to 86-470 (2008). The Act creates the "Enhanced Wireless 911 Fund" [the "Fund"]. in addition to any other funds appropriated by the Legislature and any federal funds received for wireless emergency communications, the Fund consists of the surcharge ["E-911 Surcharge"] imposed under § 86-457 of the Act. Neb. Rev. Stat. § 86-463 (2008). Monies in the Fund are required to be used for the costs of administering the Fund and for the purposes specified in § 86-465 (which includes compensating public safety answering points and wireless carriers for costs incurred to implement enhanced wireless 911 service), "unless otherwise directed *Page 2 
by federal law with respect to any federal funds." Neb. Rev. Stat. §§ 86-463 (2008); see also
Neb. Rev. Stat. §§ 86-465(2)(a)-(c), and 86-466 (2008).
LB 3, introduced in the recent special session, proposes to amend § 86-463 to provide that "[t]ransfers may be made from the fund to the General Fund at the direction of the Legislature." LB 3, § 115. LB1, also introduced in the special session, proposes to transfer $5,000,000 from the Fund for fiscal year 2009-10 to the General Fund. LB 1, § 238. You have requested our opinion as to whether the proposed transfer of surcharge monies from the Fund pursuant to LB 3 and LB1 is preempted by federal law, specifically, portions of the ENHANCE 911 Act of 2004, Public Law 108-494, and the New and Emerging Technologies 911 Improvement Act of 2008, Public Law 110-283. You have also asked us to address whether, if the transfer of monies from the Fund generated by the E-911 surcharge is preempted, it is permissible for the Legislature to authorize the transfer of any interest earned on monies held in the Fund. For the reasons set forth below, we conclude that the transfer of Fund monies generated by the surcharge to the General Fund would preclude the State from qualifying for and receiving federal grants under the ENHANCE 911 Act of 2004, and that such a transfer is preempted by the New and Emerging Technologies 911 Improvement Act of 2008. We further conclude that the Legislature may authorize the transfer of interest earned on surcharge monies held in the Fund to the General Fund, as such are not part of the fees or charges required to be used only for 911 or enhanced 911 services under federal law.
A. The ENHANCE 911 Act of 2004.
The ENHANCE 911 Act of 2004 provides federal matching grants to eligible entities, including state and local governments, "for the implementation and operation of Phase II E-911 services and for migration to an IP-enabled emergency network." 47 U.S.C. § 942(b). Grant applicants must certify at the time of application, and annually thereafter during the period when funds are made available to the applicant,
 that no portion of any designated E-911 charges imposed by a State or other taxing jurisdiction within which the applicant is located are being obligated or expended for any purpose other than the purposes for which such charges are designated or presented during the period beginning 180 days immediately preceding the date of the application and continuing through the period of time during which the funds from the grant are available to the applicant.
47 U.S.C. § 942(c)(2). "Designated E-911 charges" are defined as "any taxes, fees, or other charges imposed by a State or other taxing jurisdiction that are designated or presented as dedicated to deliver or improve E-911 services." 47 U.S.C. § 942(c)(1). Grant applicants must agree, as a condition of receiving the grant, that grant funds will be returned "if the State or other taxing jurisdiction. . .obligates or expends designated *Page 3 
E-911 charges for any purpose other than the purposes for which such charges are designated or presented. . . ." 47 U.S.C. § 942(c)(3).
The ENHANCED 911 Act thus precludes any State or local government from obtaining matching grants to implement E-911 services if the State or other taxing jurisdiction diverts E-911 designated charges for other purposes. In addition, any State or local government receiving grant funds must return funds if designated E-911 charges are used for other purposes during any period for which funds are made available. Accordingly, any transfer of monies generated by the E-911 surcharge from the Fund would impact the ability of the State to apply for and receive any federal matching grants under the ENHANCE 911 Act, and, if funds have been received, would require the State to return such funds.[1]
 B. New and Emerging Technologies911 Improvement Act of 2008.
The New and Emerging Technologies 911 Improvement Act of 2008 includes the following provision regarding State authority over fees or charges to support 911 or E-911 services:
 (1) Authority. Nothing in this Act, the Communications Act of 1934 (47 U.S.C. 151 et seq), the New and Emerging Technologies 911 Improvement Act of 2008, or any Commission regulation or order shall prevent the imposition and collection of a fee or charge applicable to commercial mobile services or IP-enabled voice services specifically designated by a State. . .for the support or implementation of 9-1-1 or enhanced 9-1-1 services, provided that the fee or charge is obligated or expended only in support of 9-1-1 or enhanced 9-1-1 services, or enhancements of such services, as specified in the provision of State or local law adopting the fee or charge. For each class of subscribers to IP-enabled voice services, the fee or charge may not exceed the amount of any such fee or charge applicable to the same class of subscribers to telecommunications services, (emphasis added).
47 U.S.C. § 615a-1(f)(1).
The Federal Communications Commission is required prepare an annual report on each State's compliance with the requirements of § 615a-1(f):
 (2) Fee accountability report. To ensure efficiency, transparency, and accountability in the collection and expenditure of a fee or charge for the support or implementation of 9-1-1 or enhanced 9-1-1 services, the Commission shall *Page 4 
submit a report within 1 year after the date of enactment of the New and Emerging Technologies 911 Improvement Act of 2008, and annually thereafter, to the Committee on Commerce, Science and Transportation of the Senate and the Committee on Energy and Commerce of the House of Representatives detailing the status in each State of the collection and distribution of such fees or charges, and including findings on the amount of revenues obligated or expended by each State or political subdivision thereof for any purpose other than the purpose for which any such fees or charges are specified.
47 U.S.C. § 615a-1(f)(2).
"Federal preemption arises from the Supremacy Clause of the U.S. Constitution and is the concept that state laws that conflict with federal law are invalid." In re Application of Lincoln ElectricSystem, 265 Neb. 70, 76, 655 N.W.2d 363, 369 (2003), cert.denied 539 U.S. 943, 954. "There are three varieties of preemption: express, implied, and conflict preemption." Id.
"Express preemption arises when Congress has explicitly declared federal legislation to have a preemptive effect." Id. "Even without an express declaration from Congress, federal preemption may be implied when Congress is determined to have intended that federal law "occupy the field" to the exclusion of state law.Zannini v. Ameritrade Holding Corp.,266 Neb. 492, 503, 667 N.W.2d 222, 232 (2003) (quoting Crosby v.National Foreign Trade Council, 530 U.S. 363, 372 (2000)). "Finally, to the extent state law conflicts with a federal statute, the state law is `naturally preempted."' Id.
Recently, the Tennessee Attorney General concluded that 47 U.S.C. § 615a-1(f)(1) "expressly preempts a State from using fees charged as part of the State's 911 or enhanced 911 program for other purposes." Op. Tenn. Att'y Gen. No. 09-87 (May 18, 2009), 2009 Tenn. AG LEXIS 102 at 14. The Tennessee Attorney General thus concluded that the State of Tennessee could not "transfer fees collected and placed in the 911 Emergency Communications Fund to the general fund." Id.
The language of 47 U.S.C. § 615a-1(f) does, as determined by the Tennessee Attorney General, support concluding that Congress intended to expressly preempt States from using fees or charges imposed to support 911 or enhanced 911 services for other purposes. Thus, the proposed transfer of monies in the Fund generated by the E-911 surcharge to the General Fund appears to be expressly preempted by 47 U.S.C. § 615a-1(f)(1). Even if 47 U.S.C. § 615a-1(f)(1) is not construed as an express preemption of the State's use of E-911 surcharge monies for purposes other than support of enhanced 911 services, legislation providing for the transfer of surcharge monies in the Fund would be preempted as being in conflict with the federal statute. Accordingly, we conclude the legislation proposing to transfer surcharge monies in the Fund to the General Fund is contrary to 47 U.S.C. § 615a-1(f)(1) and thus is preempted by federal law. *Page 5 
While the State is preempted from transferring surcharge monies in the Fund to the General Fund, we do not believe any prohibition exists on the State's transfer of interest earned on the Fund to the General Fund. 47 U.S.C. § 615a-1 (f)(1) prohibits only the transfer of State fees or charges imposed for 911 or enhanced 911 programs for other purposes. Interest earned on surcharge monies in the Fund is not part of the fees or charges imposed for enhanced 911 purposes, and thus the preemptive effect of 47 U.S.C. § 615a-1(f)(1) does not extend to interest earned on monies in the Fund.
Very truly yours,
 JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
 Approved by: ___________________________ Attorney General
[1] It is our understanding that the State has been awarded a grant, but has not received any federal funds under the ENHANCE 911 Act. If surcharge monies are diverted from the Fund, the State will not be eligible to receive any funding under the grant. *Page 1